Case number 162660. Gregory Cole and others v. Marathon Oil Corporation and others. Arguments not to exceed 15 minutes per side. Mr. German for the appellants. Good morning, your honors. May it please the court, Steven German for plaintiff's appellants. I would like to reserve five minutes for rebuttal. Your honors, German, G-E-R-M-A-N. Welcome, Mr. German. We understand this is your first argument. Correct. Very good. In this court, your honors, Garg, Gomez, the Michigan legislature, and sound public policy command that a new act resulting in a new injury creates a new cause of action with a new accrual date. And since a cause of action arises when both the last conduct and the first subsequent resulting injury occur, if that new cause of action occurs within the limitations period, then the plaintiffs are entitled to the benefit of the last three years of that limitations period. Let me ask you, just for clarification, what are the specific acts and injuries for which you allege an entitlement to recovery? Sure, Judge Donald. So the claims that are here are private nuisance and negligence. And the complaint alleges an actionable private nuisance. We allege the elements of a private nuisance, which I will go through in a minute, and we allege the elements of negligence. I'm with Judge Donald. I think I'm correct that you would like to be specific what the acts were. Sure. It was pollution from the plant. Is that right? The acts – well, the case is about what we call refinery contaminants, so all sorts of pollution, noise, odors. But I think if you look at nuisance law, we need to break that out a little bit to understand what are the acts and what are the injuries because I think that's where – I'm confident that's where the district court went wrong. The district court defined the nuisance as the operation of a refinery. That is not correct under nuisance law. Nuisance requires an act and a resulting injury. The act, in this case, is the – The operation of the refinery without the noise, the pollution, the other things in that – Well, the act is the 500 employees going in every single day, putting in new raw product that refines new chemicals, that creates new pollution, that – Releases is what you – I mean, that's what you're saying. Releases, right? They go in, they flip a switch, or they pull something, and it goes out into the community. And then the injury is when it lands on people's properties, when it wakes them up in the middle of the night, the annoyance, the interference, the fears. Those are the things that we plead in the complaint. Those things are not elements. Noise, odors, fears, those are not elements of a nuisance, and they're not elements of negligence. Those are the facts that support the claim that people's property or people's rights to their use and enjoyment of property have been interfered with. On the limitations issue, so I gather that you're seeking recovery only for the releases made within three years of the filing of your complaint. Is that correct? That's correct, Your Honor. It's the releases of the past three years resulting from the acts of the past three years, which is a very important distinction under Garg and Gomez. Right. I mean, the distinction between releases and act isn't so important here, right? I mean, it's just the stuff that came out in the last three years is all you can sue for in your view under Garg. Correct. That's what Garg, Gomez, and sound public policy say. That's what the Michigan legislature intended. But what the district court did is it said that the operation of the refinery is the injury, is the nuisance, and that's not the nuisance. It's not until there's an actionable harm, that the contamination lands on people's properties, that you have the actionable nuisance. Do you not, counsel, need to struggle with the continuing wrong theory that Michigan now does not embrace? I don't think we need to struggle. And you know why I'm asking this, and you assiduously avoid speaking about it, and you carefully frame your complaint. But the plant's been there forever, long, long time. Your clients have lived there a long, long time. The change that starts the statute of limitations clock over for your clients is, in your mind, what? Well, it's a few things. First of all, there's nothing on the record, there's nothing in the complaint that affirmatively pleads that these plaintiffs suffered some harm more than three years ago. We know nothing about the operations of the refinery. We know nothing about where the contamination from that refinery traveled. We don't know if it went north, whether it went south, whether it went east, west, whether it affected these people at all. Without a harm, there's no actionable nuisance, and there's nothing in it. I guess I didn't scrutinize the complaint in that particular regard, but I assume that the complaint says your clients have lived at that address since, for however many years, more than four. They do, but that speaks nothing. In the complaint. Okay, so we do know that. Correct. And we also, I think they've said the factory or the marathon plant has been there. That's a matter of record, is it not? Is it in the complaint that it's been there a long, long time? Correct. Okay, so how do we massage that? So the refinery doesn't act like some type of a wind-up toy, is the term we used in the briefs. The reason Marathon has 500 employees that make decisions and engage in discrete acts every day that create new product and result in new pollution is because it requires human activity. The analogy I think of is bullying. If someone goes into high school on day one, a four-year high school, and they're bullied in the first year, and they're kicked and punched one day, and they have a broken arm the next day, and their feelings are hurt the next year, in the fourth year, if this continues, and I'm beaten and my child's beaten up and is put in a coma, can I not sue to stop that bullying in the fourth year? Each day is a new act, even though the bullying is continuous in the sense that traffic moving on a highway is continuous or airlines fly airplanes continuously. So, I mean, if you sought damages, you could only get damages for the bullying from years two to, I mean, for three years back, so you wouldn't be able to recover for year one in your high school. Correct, and that's what Garg and Gomez say, exactly. Garg was the employment case, and they said, well, you can't get damages, you can't sue on what happened ten years ago, but you can sue on a new act with a new injury. Are there any Michigan cases you would point to in which the court kind of dices it up the way you're suggesting, i.e., the court says, all right, this bad act stuff's been going on for more than three years, you can't go back to day one, but you can go back whatever the limitation period is? Sure. First, I think Garg and Gomez say that exactly, and the cases the district court cites and the appellee cite, the Terlecki case, the Maryland Fulling Trust case, all those cases are actually in harmony, because all of the cases that the district court relied on were cases where there was a discrete act before the limitations period ran, and all that was happening, the alleged harm or the continuing harmful effects of a single act long ago, outside of the limitations period. Where did the district court go wrong, in your opinion? Well, I think it went wrong on a few things. First of all, On this particular issue. Well, I think by defining the act and the nuisance as the operation of the refinery, that was certainly one error, because the mere operation of a refinery is not a nuisance. We know that. The second thing is assume that the operations were continuous, and continuous in the sense that they flipped a switch 85 years ago and everything has followed as a result of that single act outside of the limitations period, and we know that's not how a refinery works. We know nothing works that way. There's no such thing as the perpetual motion machine. But on the timing issue, I mean, I'm just trying to understand what you think is the district court's mistake as to the timing issue. So, I mean, great, I mean, operation and et cetera, the two points you just made, that doesn't, how does the district court end up saying you can't sue for anything? I think that's the error of law. I don't think that the district court should have said that. I think that Garg and Gomez tell us it couldn't have done that. I don't know how the district court arrived at that result. Okay, well, yeah, I won't make you try to explain that. But just a couple of points before my time runs out. I just want to touch on the threshold issue briefly. The complaint does not affirmatively plead that the cause of action accrued outside of the limitations period. And the courts are clear, not only in this circuit, the U.S. Supreme Court across the country. The district court specifically asks you in an argument when this stuff happened, you really need to answer that question. I mean, just, you know, I'm not trying to give you a hard time, but the court, I understand your point, but the court's allowed to ask, you know, a question about your allegations. And I think, you know, I think the court should probably get an answer. The answer is every day. When there's a new act and new contamination comes out, the answer is every day because that's how a refinery truly operates. So that's the answer. You can't say it happened on, you know, September 2nd, 2014. You just cannot do that until you get into discovery and you learn about what's going on. Well, when you get back up, you'll tell us the difference between happening every day and a continuing wrong. Okay. Thank you, counsel. May it please the court, Amy Johnston, appearing on behalf of the defendants, Epoly's Marathon Petroleum Corporation, Marathon Petroleum Company, and Marathon Oil Corporation. Your Honors, the district court got it right. The district court properly dismissed this complaint as a matter of law, and we would request that this court affirm. The first point is what forms the basis of the plaintiff's claim? And the district court asked plaintiff's counsel that question. And I quote from the transcript. This is Doc 38, page ID 288. The court says, all right, okay. So do you agree that the alleged nuisance or negligent acts, to your points, Judge Donald and Judge Cook, as alleged in your complaint emanate from the operation of the Detroit refinery? Mr. Gurman answers, yes, we do. So the complaint, when you look at it, it talks about the nuisance and negligence as being the operation of the Detroit refinery. In fact, paragraph 2, you don't have to go far. It talks in terms of release, the release of all these different bad things. It does talk about release, Judge Ketledge, but it also says, and it specifically defines the nuisance as the defendant's operation of the refinery, which is continuous and remains unabated. I would refer to paragraph 63 of the amended complaint. Does the operations continue to result in the release? I don't really know why this particularly matters, the distinction we're talking about. In the guard case itself in Michigan, I thought the court made the distinction that Mr. Gurman is seeking here, namely you can't sue for, in an instance where you have acts that have been continuous, the same thing kind of basically going on over time. The guard case, and correct me if I'm wrong, seems to say that you can sue for the acts that occurred within the limitations period, but you cannot invoke the continuing wrongs doctrine to go back to day one. So the guard case involved a specific statute, and the elements of the statute did say in that case, and that's the same as the Gomez case where we're talking about a specific environmental statute that was allegedly violated. The elements of those statutes say in GARG it was the alleged discrimination, and so the court said if there was acts of alleged discrimination, if you recall, Your Honor, in the GARG case, there was a protected act that occurred back long ago. The court recognized there was one protected act. And what the GARG case said was supervisors had changed over time, and if you look at that protected act, were there violations within the limitations period? But what they were saying was were there new acts? Was there something new and different? Was there some type of discrimination that appeared? You said new and different, but I'm not sure that that's an accurate reading of it, because that would seem to suggest that the releases on day five would need to be different than the releases on day ten, and obviously the refinery is going to be releasing pretty much the same stuff all the time. What I wanted to ask you, though, do you disagree with Mr. Garmon that the release of emissions each day would constitute a new act which might give rise to new injuries, which would potentially trigger another potential cause of action every time this happens? I do disagree with that, Judge Donald, and let me tell you why. If you go back to the line of Michigan cases that were around when we had the continuing wrongs doctrine, so you look at the cases and the types of cases in which the court said, okay, this is a continuing wrong, so it's not barred by the statute of limitations. The court looked in the Oakwood Homeowners Association versus Ford Motor Company. Those were operations of plants, the Ford Motor Company plant, the Marathon refinery, Edward Levy plant that was giving off alleged pollutants, and the court held that the only reason at that 1977 time that that case wasn't time-barred is that those were continual tortious acts that served to toll the statute of limitations. I would also cite for you the Moore versus— Distinguish that from the plaintiff's situation here. There is no distinguishing, Judge Cook. That is the plaintiff's situation here except that the continuing wrongs doctrine since the time of that case has been abolished. The continuing wrongs doctrine in Michigan, as I understand it, just lets you go back to day one. It's not necessary for you to go back to events that occurred within the limitations period. Actually, Your Honor, I would disagree. The reason that GARG abolished the continuing wrongs doctrine is for that very reason. If you were to accept plaintiff's argument as true, every business that continued to operate would always be subject to some type of tort within the past three years. So as long as they continue to— People that are engaging—I mean, let's say your neighbor is engaging in some just really terrible nuisance. And for whatever reason, maybe you're traveling a lot and you don't do anything about it. You don't bring suit for a number of years. And then finally, you can't take it anymore. And, I mean, let's say the nuisance is, I don't know, he's spraying— Ditching. Yeah, he's not taking the garbage in. Or he's dumping some really smelly thing in a creek that runs through both of your backyards. He's been doing it for three years. And now you have some damages to your home because of the vapors or something. Is it really the law in Michigan that because, say, you tried to work it out amicably for some period of time, that now you can't recover anything that tomorrow's release— your claim for tomorrow's releases is time barred? Is that the law in Michigan? As opposed to your claim for releases three years plus one day ago. So the law in Michigan is very clear that the claim accrues at the time of the act plus the first injury. I mean, do they have a claim for stuff that hasn't even happened yet? For releases that haven't happened yet? I would distinguish your hypothetical on the basis that you may have a neighbor who does something once in a while. Let's say it's every day. That's my hypo. Okay, every day, constantly continuous, same time every day, same amount every day, does the same thing every day. I would say that the time that you as a homeowner are first injured is when your claim accrues. You have three years from that date to file a claim. So my claim for the stuff he dumps in the creek tomorrow is time barred? If it's the same stuff and he's been doing this every single day, that's the frolling trust. It's a fiction to say that tomorrow's act has already happened and that it's the same act as a number of years ago. That's just a fiction. But it isn't because that is a continuing tort. And I would distinguish it if you had a contract or you had something different than an actual tort. But the law in Michigan and the reason that Garg abolished the continuing wrongs doctrine was for that very reason. Otherwise, you render the statute of limitations meaningless. Not at all. I'm sorry, is tort different than nuisance? I mean, are you making a point there? I'm not. I'm just drawing a – We're more talking nuisance here. Yes. Council is too. And I would say that what we would contend is that the nuisance that is alleged in this case is the condition of the refinery. That's the nuisance that has been alleged. He uses the word release. Well, and they use the release in the Oakwood Homeowners Association. And they use – Look, I mean, this is my second case of this plant. Okay? And the first one was really conclusive. I'm sure you're familiar with it. I am. And they just recite the elements. This one, I mean, apparently they learned from the last one because this one, he's talking about release of odors. I mean, Mr. Gurman pointed out it's not just a recitation of the elements. Odors, you know, vapors, all this bad stuff. They get to write their complaint and that's what they said. And those things are happening each day. If you were to apply that, Judge Kethledge, then when would the statute of limitations end? Let's say hypothetically. Well, as for each act, each release, you know, it ends three years later. And, I mean, you make the argument that this would render what they basically seem to have done in guard would render the limitations period meaningless. But that's not true. Let's say they've been doing, the plant's been doing this for 20 years. Well, you get 17 years of protection there. And that isn't meaningless. And then if some hypothetical operator stops releasing the stuff, they're going to get, the limitations period is going to fully protect them three years after they stop it. So I would refer you to the Moore v. City of Pontiac case. This was a case that was cited in the Terlicky case. And it's also another example. That's a case where a city put a landfill in. And the landfill was right across the street from homeowners, people who bought their property before the landfill went there. And the city expanded the landfill. And they did other things with the landfill. And in that case, it's- New wrongs. No, continuing wrongs. The court specifically held- Expansion wouldn't be a new wrong. I mean, we're really talking about concepts here. And it's important to think whether that expansion would not, you would say the law wouldn't concede that to be a new wrong. No, I wouldn't necessarily say that, Your Honor. But I would say that the operation of the landfill itself is something that the court held, including these acts, was a continuing nuisance. That's how Michigan law has defined it. So what was the upshot there in terms of, was there a limitations? There was a limitations argument. And the only reason that the court held that the statute, this was a 1985 case that the statute had not expired, is because it survived under the continuing wrongs doctrine. Not expired as to stuff that happened on day one, probably. The continuing wrongs doctrine, as I understand it, is something, it was a doctrine that's meant to benefit plaintiffs. It was a shield for them that let them go back to day one, rather than be confined within the limitations period. And if you take that doctrine away, it's not then a sword that cuts them down for all time. It's just you no longer have that benefit of going extra far back. Isn't that all the Michigan courts did? I don't believe so, Your Honor. I would respectfully disagree. What's the case that best says your interpretation here? Namely that it's just, you know, if you miss your chance three years after they first do a similar act, you can never challenge the act. The case that I think best explains it, Your Honor, is the Gustello case. And we've cited that in our, and we've provided a copy of it to our submission. And it is a case that explains, it goes back and it looks at, okay, what was a continuing wrong at the time that we had the continuing wrong doctrine? What was that defined as? How was that defined? And once we abolish that doctrine, how is it going to be applied? Because the fact of the matter is it's very clear in Michigan, under the Supreme Court decision, even the Henry v. Dow chemical decision, the claim starts, the clock starts, at the time of the condition plus the first injury, not subsequent injuries. We're not even talking about injury. But injury, the disclosure of an actual patent injury, health, I don't know what the injuries are here. They say it's just they're a little amorphous. I know that's the next issue. But somebody whose cancer developed and it is disclosed, now would that be a different starting point under the law? Under the law, yes, Judge Cook. Diagnosed and all of a sudden you go three years back. If you suffer, when you first realize that injury, I think the law makes it clear, it's the first injury, it's the act plus the first injury. And that's when the clock starts. So then they would have three years if they're first injured. And to Judge Ketledge's point, if you're away from your land and somebody's doing something and it's not really injuring your land, say they're dumping and they're not injuring, but after maybe a series of dumping it suddenly injures your land, at the time that it first does, that's when the clock starts. My hypo was injury from day one. I apologize. I thought you were traveling. I apologize. And so with the little bit of time that I have, I would say that while this is an 89 paragraph complaint, which is longer. I'm going to interrupt you because you have no time. If I could, please. No resident living near the Marathon plant can bring a cause of action for the nuisance. Under your analysis. I would not say that, Your Honor. Who could? I would say if someone first experienced an injury, so say somebody moved into the area and they had not experienced an injury. And they found it noxious. They found it noxious. They weren't diagnosed with anything. They just found it to be noxious. Everybody there, no doubt, does. Okay. So what's the answer? So the answer is when they first experienced the injury. But the case that we have here is the only allegation of injury, and we are required to look at the face of the complaint, which Judge Cox did. And I believe that the only reasonable conclusion that he came to is the only injury they said is that they own property near the refinery. And that's what they're alleging is injury. And we know that they've owned that property for 15 years. So you can't help but ask why now. Judge McDonald has a question. I'm sorry. You've characterized or framed the analysis in terms of the regular omissions of a like or similar type. But let's say that all of a sudden the volumes or the noxiousness, if you will, of the omissions change, even though many years have passed. Does that give rise to a new action? I would say if there's something new that occurs, if there's some instance, say, for example, there is a specific, and I think the plaintiff cited it, there was a specific fire at the refinery, that's not something that occurs on the everyday operations, that that would be a new, distinct, something different and distinct. Add a line of some different whatever it is at the refinery, and all of a sudden the volumes or even the types change. That would give rise to new causes of actions, correct, under your analysis? It may. Let me say that it may. But I will also say that in this particular complaint, that's never alleged. And, in fact, they allege continuous and ongoing and lead to one conclusion, which is this is a continuing tort. That's all they're alleging. Thank you. All right. Thank you, counsel. Have you saved time? I did. All right. Thank you. A few points. First of all, the defendants misconstrued Michigan law. It is not the law that it's the first act, first injury. The law, Froling Trust is very clear, and its progeny, it's last act plus first resulting injury. So you get to go back to the last act and the first corresponding injury. And, in this case, we allege wrongful omissions as the act. We allege them. We didn't even have to, but we allege them in the present tense. We allege an invasion. That's a new act with a new omission and a new injury. So a new thing is happening every day when someone goes in there and pulls that lever, and poof, all that contamination comes out and lands on plaintiff's property. That contamination, it's ephemeral. The noise is ephemeral. The noise that was here yesterday isn't here today. It's a new act and a new injury, first point. Second point is Gomez rejects this concept of it's the same stuff that they're putting in. The defendants and Gomez argue, well, we're just putting the same stuff into the land, so it's not a new injury. Gomez says, no, that's not the way it works. And there's no precedent that the defendant cited or the district court cited or that we're aware of that says when you just put the same stuff in, it's a continuation. It's not. The Costello case is in harmony with our argument today. It's in harmony with Garg and Gomez and Frolin Trust, because Costello was about a single trespassory act outside of the limitations period. They installed a drainage ditch outside of the limitations period, and then they just left it on people's property, and then there was flooding and damage to the property. But that recurring harm was from the original act. There wasn't a new act and a new resulting injury. There was only one act by the defendant. The act had effects that lasted a long time, but you can't sue for an act that happened before the limitations period. Correct. Because it was outside of the time limit. I didn't say here that each release, pulling the lever, so to speak, is a new act. Correct. Correct. And that's a new ditch each time. Right. Correct. I think the law will permit, the Michigan law will permit every resident within a mile, let's say they're off subject, every resident within a mile to sue for every three years. Anytime they want to pull the trigger, just like pull the lever, they can sue for three years of damages. If there's a new act and a new injury. No, everybody experiences the one you're assessing, correct? Everyone could sue when they're harmed from a new act. That's my point. You and I would have to use your theory. Your neighbor, this neighbor, whatever, 10,000 people would have the same benefits here. Right? That's correct for the wrongful tortious conduct. The defendants can take acts which we'll learn during discovery. They could put scrubbers on those emissions. They could reduce their emissions. There are things they could do that are not in the record before the court now that may or may not, we'll find out in discovery, allow them to operate the refinery in a way that doesn't interfere with people's property, with their ability to sleep, with their ability to have a barbecue and have their kids play on a lawn. The argument that the defendants are advancing, the public policy consequences of the district court's opinion, if it were to be extended, and what the defendants are arguing for, is disastrous, not just to the rights of landowners, rural landowners who live near hog farms and the spray fields of manure pits, to city dwellers who live near a. . . Okay. Parade of horribles. But it is important for all people that the district court's opinion be reversed. And the last point, Your Honors, is we found out yesterday that the Michigan Court of Appeals came down with the Henry decision again. It's called Henry III. It wasn't related to the statute of limitations argument on the continuing wrongs doctrine, but it did reiterate the point that there are countless ways to interfere with the use of enjoyment property. As Judge Kethledge said before, it could be the noise, the odors, things like that. It's not just the elements that we've. . . They do a Henry IV, they'll have to do it themselves. Would you like the citation for that, or are you going to look it up? It was June 1, 2017. Anything else, Your Honors? Thanks for the chuckle. Thank you. Thank you very much. All right. Thanks so much. We'll take your case under advisement and issue an opinion in due course. And we appreciate you did a fine job on your first argument. Thank you. And we'll adjourn court.